

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
FILED

LARRY DARNELL COBB,
Plaintiff,

2021 APR -2 P 1: 35

VS.

CLERK OF COURT
Case Number **21-C-042**

Dr. Joseph McLean,
Dr. Dmitriy Chester,
Nurse Katie Kropidlowski,
Nurse Jennifer Vaughn,
C.O. David Firkus,
Sgt. Quianna McBride,
Kesha Packer,
Ms. Fry Unit Manager
Defendants.

## COMPLAINT
## PURSUANT TO 42 U.S.C.A. 1983

### A. PARTIES

1. Plaintiff is a citizen of Wisconsin, and is located at 4536 N. 28th St. Milwaukee, Wisconsin 53209.

2. Defendant Dr. Joseph McLean, Dr. Dmitriy Chester, Katie Kropidlowski, Jennifer Vaughn, David Firkus, Quianna McBride, Kesha Packer, and Ms. Fry is a citizen of Wisconsin and resides at 1015 N. 10th Street, Milwaukee, Wisconsin 53205 and worked for the Milwaukee Secure Detention Facility.

### B. STATEMENT OF CLAIM

It shall be noted that on March 5th, 2018 the plaintiff was admitted to the Milwaukee Secure Detention Facility under the mistaken identity Larry D. Gibson DOC#385075. He was received from the Milwaukee County Jail with instructions in regards to his seizure disorder. Complaint begins as follow;

Dr. Chester and Dr. McLean violated my federal rights when they deprived me of my epilepsy seizure medication "Levetiracetam 500 mg" for 30 days (between March 5th, 2018 thru April 5th, 2018) which resulted in serious harm after suffering a severe seizure in my cell on April 5th,

1

2018. I sustained a busted head wound that wouldn't stop bleeding and that had to be glued (repaired) at the hospital, and I reinjured my back forcing me to obtain several surgical epidural injections to try to seek alleviation of pain with no success. Prior to suffering the seizure, and while being deprived of the seizure medication I had many mental and emotional breakdowns where staff had to step in and try to calm me down. I went through abnormal anger spells, thoughts of suicide, experienced extreme headaches, had trouble breathing, and on many days the episodes were so intense that I thought I was dying. Dr. Chester was fully aware of the need for my seizure medication, but he failed to act by ensuring that I get my medication. On March 6th, 2018 he time stamped Wisconsin DOC-3021 which is a "Progress Notes form", that explained that I have a seizure disorder/history. Yet, my medication wasn't given to me. Dr. Chester even signed and time stamped this same WI DOC-3021 "Progress Notes form" on December 14, 2016 which shows ALERT and note that my last seizure was 3 weeks ago, and that I am on seizure meds. Other documents contain the same type of data for each time I was processed within the facility, and it should be noted that I was always given my seizure medication. However, on this incarceration between March 5th, 2018 thru April 5th, 2018. No seizure medication was provided by Dr. Chester. This deprivation of my seizure medication was harmful and violated my rights.

Dr. McLean was fully aware of the need for my seizure medication also, and he too failed to act and ensure that I get my medication. I encountered Dr. McLean twice. Once during the physical examine where the need for my seizure medication was discussed. This examine took place on or about March 9th, 2018. Dr. McLean noted that my medication would be sent to the unit. No medication was sent nor received. Dr. McLean even called me back to his office an additional time because of my name Mr. Cobb, and me being imprisoned as a Gibson. I was told that I had to fill out a Medical Authorization form for my name Larry Darnell Cobb because he wanted to review my out of prison hospital records for my name Larry Darnell Cobb. Again the need for my seizure medication was discussed. And again Dr. McLean noted that my medication would be sent to the unit. No medication was sent to the unit again. And Dr. McLean made no attempts to provide me with my seizure medication even after seeing that I was on the medication previously and that I was on the medication from the facility I arrived from. This deprivation of my seizure medication was harmful and violated my rights.

On April 5th, 2018 I was in bad shape. This would make it the 30th day I've been deprived of my seizure medication within the facility. On this day Nurse Kropidlowski was on the unit, and I made contact with her. Upon making contact with her, Nurse Kropidlowski immediately noticed my blood shot eyes and asked me what is wrong with my eyes. I told her that I couldn't breathe and that my head was hurting badly. Nurse Kropidlowski did not provide me with any medical help at this time. Instead she told me to go lie down for a while and see if that help. She did not do any vitals, blood pressure etc. or help with my med's, and or send me to the HSU Doctors. I went back to my cell where I was locked in the room where I later suffered a seizure, busting my head open and nearly died. Had Nurse kropidlowski stepped in at the time I made contact with her, and provided me with medical attention at a time where I was suffering physically, mentally, and emotionally, my having a seizure could have possibly been prevented. Nurse kropidlowski

2

turned a blind eye to my suffering, and violated my rights when she left me on the unit without providing me with medical help.

C.O. Firkus and Sgt. McBride on April 5th, 2018 violated my federal rights when they denied me access to emergency medical help. While locked in cell 11 on unit 6D symptoms of my seizure disorder intensified, and I knew I needed medical help. I pushed the emergency intercom button in the cell and C. O. David Firkus asked, "what's your medical emergency" and I told him that my head was hurting and I couldn't breathe call 911 get me a nurse. C.O. Firkus denied me help and told me to fill out a blue slip which is a health service request form. This medical issue required immediate help, I've been off my seizure meds for 30 days and I know I needed to be at the hospital. I pushed the emergency button and asked Firkus for medical help again, and again, and again only to be denied help. Firkus ignored answering the intercom button and just left me to suffer. (It should be noted that if I was out the normal protocol would be to call 911 where I would be rushed to the hospital by paramedics and be provided with my seizure medication Levetiracetam in the liquid form through IV to help stabilize me.) C.O. Firkus and Sgt. McBride both failed to provide help. Sgt. McBride was in the bubble with Firkus and heard my cries for medical attention the entire time and she too turned a blind eye and denied me access to medical help. When Firkus stopped answering the emergency intercom, Sgt. McBride finally answered it and stated that she was going to call me a nurse, but never called any help for me according to the nursing team, she just left me to suffer also.

These staff denied me help and treated me unfairly because I was upset on their unit about feeling I was wrongly incarcerated and they maliciously left me without help. Sgt. McBride was angry and irritable alone with C.O. Firkus because I kept pushing the emergency button pleading for emergency assistance. (I knew I was in need of serious help from the hospital because I had the same symptoms where I had a previous seizure in the back of my grandmother house where neighbors had to perform C.P.R. on me. I was revived and 911 were called and I was taken to the hospital where I was given my medication Levetiracetam.) I felt the same way on the day of this seizure inside of MSDF. On April 5th, 2018. I remember crying and I was awakened by Nurse Jennifer Vaughn. I had lost consciousness. I had a seizure. Blood was everywhere. I felt numb. I couldn't feel anything. The look in nurse Vaughn eyes told me I was hurt badly. She looked scared. I thought I was dead. My head was busted open from the fall I took in the cell. The bleeding wouldn't stop. Nurse Vaughn tried to apply pressure to the wound, but it didn't slow the bleeding. I couldn't stand up. Nurse Vaughn told me to stay down. The man in the room with me name was Marvel Clayton. During my seizure it was learned that Clayton yelled, banged, and kicked on the cell door to finally get the attention of C.O. McCoy who happened to be doing a round. McCoy dispatched for help. C.O. Firkus and Sgt. McBride would have let me died this day. I pleaded for help for well over an hour before losing consciousness. Nurse Vaughn however acted unfairly when she waited for over 15-30 minutes before allowing the paramedics to transport me to the hospital leaving me to sit bleeding and be disoriented. I was in such bad shape with the injuries that she tried to stop the bleeding vs. allow the paramedic to take me to the hospital. When I finally made it to the hospital I was immediately given my medication Levetiracetam through IV twice. The hospital nurse Butler stuck me with needle numerous times and asked if I could feel her poking my arms and I couldn't feel a thing.

3

Other nurse attended to my head wound that wouldn't stop bleeding. As a result, the Doctor had to glue (repair) the wound shut. I was cleared and sent back to the prison MSDF. No staff wanted to be associated with the serious harm I received when I returned. I was moved from room 11 (top bunk) to room 2 (low bunk). My head/eye was swollen and I was left sleep in coma-like stage for days. No nurse or staff checked on my welfare. No ice pack was given to me. I reinjured my back and even that issue went unnoticed. When I began filing complaints and utilizing my First Amendment Right by being vocal about my near death experience and that the defendants are responsible for harming me. Harassment and Retaliation by Sgt. McBride became frightening violating my federal right to have equal access to the grievance system. To deter me from my complaining defendant McBride engaged in the following behavior which harmed the plaintiff body, mind, and spirit.

On or near the following days of;

04/14/2018 I was held in observation for several days after having a mental health breakdown after staff left me to have a seizure in cell. I lost trust in staff naming sgt. McBride and Firkus and was afraid for my life. I became extra vocal about Firkus and McBride lack of Action to help me and I made it clear I did not want to be around them and that I was writing them up. I even requested that I wanted to be moved to Unit 9 a DOC pod for state prisoners. Nothing was done.

Instead, on or near 04/16/2018 I was moved to unit 6S C, a mental health unit for men who needed "extra" help and attention for their mental health /special needs. Firkus worked this unit. I was still injured and expressed verbal dislike for his failure to call help for me during my seizure. I expressed the same to McBride who came to the bubble window on 6S C side. I was rude, but not disrespectful. They both were upset. And so was I.

On or near 04/20/2018: I was moved from top tier to lower tier, low bunk low tier (Restriction) I told McBride.

On or near 04/27/2018: McBride suddenly moved me from Defendant Firkus unit 6S C to her unit 6S D. McBride put me in cell 19 as punishment. Cell 19 has a big brick wall in front of it whereas you cannot see out the cell window to see what time it is, know what day it, view the television, see people in the dayroom, so forth. The cells with the Bricks in front of them are knowingly viewed as the worst cells. My mind couldn't deal with that and I was moved to cell 23.

On or near 05/09/2018: I was moved to cell 23 the last cell under stairwell far to the back. While in this cell McBride put an inmate name Troy Hart in the room with me. The man was severely sick and contagious. He couldn't stop spitting up mucus everywhere in the room. I immediately complained to McBride and asked to be moved because I did not want to become infected by whatever virus he had. "Nothing was done." I then wrote Ms. Frey the unit manager I received no response. I even wrote health services with the concern but by then I too became ill. In order to get out the cell with him and off the unit away from Sgt. McBride, Sgt. McBride told me "I had to refuse to lock back in the cell; I complied only to be subjected to more punishment by being placed in solitary confinement."

I was placed in solitary confinement for refusing to lock back in the room with Troy Hart who had a virus and as a means to free myself from McBride unit.

4

On or near 05/29/2018: When I was released from solitary confinement I was sent back to Sgt. McBride unit 6D again. Upon entry into her unit McBride sent me back to the same cell #23. This time a different person name Richard Steinsal was in the cell. I was put on the floor in a boat for week(s) despite there being other rooms available. The man had bad health problems, he said he had a bad infection and was urinating blood which was always on the floor and toilet where I had to sleep/lay my head at. I complained to the Sgt. McBride about the harsh condition. This time I was accompanied by Richard Steinsal because he had his own complaints; a nurse had him urinate in a cup, which was full of blood, however the nurse left the housing unit also leaving him stuck with the cup of blood. Sgt. McBride and C.O. McWilliams argued with Mr. Steinsal and told him to take the cup full of blood and urine back to the cell, in which at that time I intervened by asking why do the blood and urine have to be around me, especially if its infected, and they both, Sgt. McBride and McWilliams supported one another by stating "it isn't sitting around us". I felt afraid, deprived, humiliated and mistreated. There was nothing I could do.

On or near 06/11/2018: I was moved back to cell 11, the cell where I first suffered seizure only to have to relive the experience over and over. McBride played loud music through the intercom speaker and intentionally kept me locked in the cell when I had family visitors waiting on the clock to see me. A search of their log book/duty roster compared to my visiting list/timesheet sign in sign out will show my visitors limited visit to me. Visits are only 30 minutes, by the time McBride finally let me out the cell I was left with a 10 minute visit. When I complained about everything that was happening to me, I was punished by being moved back to cell 19 a cell that McBride knew had a mental effect on me.

On or near 06/26/2018: I was moved back to cell 19 for punishment and put back on upper bunk intentionally even after telling McBride I was low bunk restriction. (Seizure disorder). Sgt McBride put me at a heightened risk by putting me on the top bunk disregarding medical restrictions and doctors' orders. This was done in order to punish me by inflicting psychological pain and stress. While in this cell I suffered episodes and was placed in 5N "Observation" for monitoring.

On or near 07/02/2018 I was released from observation and I was sent back to 6S D sgt. McBride unit. McBride put me back in Cell 19 as punishment for complaining. And she put me back on top bunk again disregarding medical restrictions and doctors' orders. This was done in order to punish me by inflicting psychological pain and stress. McBride put me at a heightened risk of being harmed if I were to fell from top bunk if I would have had a seizure.

On or near 07/12/2018 I suffered episodes in cell 19 again while McBride was gone or had days off. Staff moved me from cell 19 top bunk to cell 13 low bunk per doctor's' order/ restriction.

On or near 07/16/2018: When McBride returned back to work/her unit 6D, she saw that I was moved to cell 13 low bunk and She immediately moved me back to cell 19 for punishment and was clearly upset that staff properly moved me to cell 13 low bunk. The harassment and retaliation was obvious.

On or near 09/10/2018: I was moved to 5N Observation again from cell 19.

On or near 09/11/2018: I was moved back to McBride's unit. I was put in cell 1 where there's a brick wall. A man was put in the cell with me, and staff put no name tag on the door for him which was supposed to bear his identity. He said he was an ex sergeant from Fox Lake Prison who was convicted for raping inmates. "I did not sleep for days". I did not feel safe, and I complained to Sgt. McBride and asked

5

to be moved. She asked me what did the man say, and I told her he said he was an ex sergeant from (FLCI) who was convicted of raping inmates. Without speculating, it was as if Sgt. McBride already knew that.

On or near 10/04/2018: McBride then moved me into cell #15 where the water did not work in the cell. She was made aware of this, and stated that she would put a work order in. I am uncertain if she put a work order in. I told other staff this as well. When McBride came back to the unit, the water still was not fixed and I left the facility on October 12, 2018. In respects to this deprivation, 3rd shift C.O. John Doe had to let me out the cell to get water 10/11/2018 at approximately 3am or 4am in the morning against institution policy and procedures because I was dehydrated and had no water to drink inside my cell. This C.O. John Doe worked with the regular unit 3rd shift Sgt. Ms. Williams on this particular day. I had requested a search/copy of their log book/duty roster to identify this C.O. John Doe but there was no response. I also requested the name(s) of their maintenance worker(s) in order to learn what day the water was cut off in the cell and what day was the water restored. There was no response. The plaintiff has grave concern in regards to this matter. The plaintiff seeks to find out why nothing was done by McBride upon learning that the water did not work in the cell the very first day I told her. "She sat back and did nothing because she wanted to punish me." If I was not transferred and freed from that institution, I believe based on the persistent pattern of McBride's foul behavior towards me for reporting/complaining of my issues, she would have found more creative ways to punish me. These things happened because McBride's Misconduct went unchecked by supervisors who rarely did rounds. There is no doubt that McBride felt threatened because I was remaining vocal about my near death experience whereas I was found unresponsive by Nurse Vaughn in a pool of blood. McBride's Job alone with others were in jeopardy due to my consistent complaining and she reacted by using acts of harassment, Intimidation, machination, retaliation, all which caused psychological pressure that created fear deterring the plaintiff from pursuing his grievances and having equal access to the grievance process without fear. The more I complained the worst things got.

Kesha Packer the MSDF complaint examiner overlooked my need for help when I wrote her complaining that the defendants Chester and McLean refused to send my seizure medication down to the unit. I further complained about the mistreatment and later denial of access to medical help by the defendant McBride and Firkus which is outlined in this complaint. Packer disregarded my complaints and the duty to investigate a serious issue concerning my safety and health which resulted in my near death experience and suffering a seizure and having many mental health breakdowns within the facility. Packer Instead of addressing my serious need for seizure medication and the harm I was being exposed to, searched for ways to deny me access to the compliant system by denying complaints or letters/ request forms noting that they must be filed on proper/updated complaint forms. However the plaintiff was trapped on a housing unit where he was being mistreated and deprived of access to valid complaint forms. In fact when it was time for me to file complaints, complaint forms disappeared and when I was persistent on asking staff to print off forms for the unit I was given improper or outdated forms. Kesha Packer denied my complaints and serious need for help or for authority to step in and ask questions as to why I'm being deprived of my seizure medication and why am I being exposed to such harsh conditions. She denied my request for help because the complaints were against her friend McBride and other coworkers she was friendly with. She denied me help because I was housed on the mental health unit where patients-prisoners were left abused, neglected, deprived of medical help, and mental health treatment.

6

Ms. Fry the unit manager violated my rights when she failed to step in on a unit she was responsible for managing. I believe that there is a spell check on her name. During the times I wrote Ms. Fry through DOC request forms with complaints of the mistreatment outlined within this complaint she failed to respond. She failed to remove me from the staff Sgt. McBride who was retaliating against me and never questioned why McBride was harassing me. She never conducted a welfare check on me and left me suffering on her unit. I wrote her in regards of being intentionally moved to the top bunk which was putting me at harm. She didn't respond. I wrote her to being on the floor in a room where blood was on the floor where I had to lay my head at no respond. Ms. Fry left me suffering on her housing unit that she was supposed to be managing.

## C. JURISDICTION

I am suing for a violation of federal law under 28 U.S.C. S. 1331.

## D. RELIEF WANTED

The defendants are liable for the unlawful conduct that has been presented to the court. For the physical, mental, emotional, and spiritual trauma that the plaintiff has received by defendants Chester, McLean, Kropidlowski, Vaughn, Firkus, McBride, Packer, and Fry,

(1) Plaintiff is entitled to actual damages in an unspecified amount.

(2) Plaintiff is also entitled to punitive damages in an unspecified amount.

(3) Plaintiff want the court to include and attach to its findings of Deliberate Indifference Wisconsin State Law that governs negligence.

(4) And also include First Amendment Retaliation Claims against McBride and any other claims the court deem appropriate. Lastly;

(5) Plaintiff want to see some change and do not want this behavior by the defendants to occur again to patients/prisoners held at the Milwaukee Secure Detention Facility, essentially, the Mental Health Unit. This change must include mandatory daily inspections/welfare checks per shift by Unit Managers, Supervisors, Social Workers, Psychologists, on all patients/prisoners on the Mental Health Unit which must include written notes and/or verifiable documentation concerning their safety, current mental and emotional status, medical needs/injuries, and a treatment plan that's designed to provide immediate help to the patient/prisoner.

### E. JURY DEMAND

Yes I want a jury to hear my case.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this _30th_ day of _March_ 2021.

Respectfully Submitted,

Larry Darnell Cobb

*Larry Darnell Cobb*
Signature of the Plaintiff

4536 N. 28th
Milwaukee, Wisconsin 53209

---

Mailing address of the Plaintiff

### REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE

I **DO** request that I be allowed to file this complain without paying the filing fee.
I have completed a Request to Proceed in District Court without Prepaying the Full Filing Fee form and have attached it to the complaint.